Good morning. Good morning. May it please the Court, I'm Michael Hagelin, representing Appellant Holland America Bulb Farms, and I'd like to reserve four minutes for rebuttal. This is a case where Plaintiff Midbrook seeks to enforce a $2 million-plus foreign judgment under Washington's Uniform Foreign Judgment Act. The central issue is whether the specific Dutch proceeding that produced this judgment met the requirements of due process or fundamental fairness. The underlying dispute is a simple commercial collection case. Bulb supplier Midbrook agreed to sell containers of flower bulbs to Washington bulb grower Holland America on an actual cost-plus-a-commission basis. The arrangement unfolded over approximately six years, from 1994 to 2000, and then a dispute arose over Holland America's alleged failure to pay invoices and Midbrook's alleged overcharges on those invoices. My understanding, just putting all the facts in perspective, that your client does not dispute that it did not pay the plaintiff. All it disputes is it lodges a counterclaim over the overbillings, but it does not dispute it did not pay these invoices. It did not pay the invoices in full, and it was both defending the collection action on the grounds of fraudulent overcharges and counterclaiming for I understand the counterclaim, and I understand what, but I understood from reading the record that your client doesn't dispute that it has not paid the plaintiff. In fact, it instead says, I don't need to pay because you've overbilled me. Correct. That's what I understood. That's correct, Your Honor. So the fact that someone in that particular situation, if we're looking at the Holland court, the fact that you do not dispute you didn't pay, this is all a dispute over whether there was overbilling, right? Fundamentally, yes. Because if they didn't overbill, you should have paid and you didn't. But if they did overbill, then there may not be a reason for you to pay, correct? That's correct. And as I understand the evidence, what happened here was that you got some discovery, but not all you wanted. Isn't that also correct? No, that's not correct. What we got were summaries. We got post hoc summaries of the costs that Midbrook had incurred. You want to call it something, but frankly, it seems to me that you got some information. We got some information. You can call it what you want. I just called it discovery because that's what it is. You were asked to discover certain information. You got some information as a result of those requests for discovery, but not all you wanted. Well, we got, in any commercial case like this one, the first thing I as a commercial litigator would... Answer my question. I understand what you're... Some information was given, but it wasn't the underlying cost records. I understand. So you're suggesting I got some information, but it wasn't what I wanted. That's all you're saying, right? Well, we're saying that the level of non-disclosure in terms of, I mean, twice the district court said in Holland, you've got to provide the underlying cost records, and then inexplicably in a third intermortar, a few years down the line in this lengthy case, they said the cost summary... You were provided cost summaries, and we don't think that your objections to the invoices were sufficiently specific. The problem is that our client wasn't in a position to really know how to object more specifically because it didn't get the number one thing that any request for production in a case here would be your first request, provide all the cost records that support the fact that you charged us as you promised. The Dutch court said, as I understand it, they said Holland America should, quote, specify the invoices to which it objected, concretely indicating which amounts Midbrook invoiced unjustifiably to Holland Farms and why. In other words, if you have a list, say, we shouldn't have paid this one in 1994 because it was above the market rate. Your Honor, the problem is... Did you do that? Objections were made, but they were not able to get at the underlying cost records because they weren't supposed to charge a market rate. They were supposed to charge... Were the objections specifically to each of the invoices, and the court said, and explained why, I object to the invoice because it charges me too much because the market price on bulbs was this, and they charged this. The objections said that, as to specific costs, we believe that they were over what they actually incurred. I know you believe it, but did you tell the Dutch court... Yes, they did. They're overcharging us, and because here is what other people were selling bulbs for, and they were charging us 10, and other people were selling for five. Did you do that? Yes, and I'll get that and provide it to you during my rebuttal time, the actual excerpt from the record. Counsel, you ultimately appealed to the Court of Appeals and the Dutch courts, correct? You appealed to the Dutch Court of Appeals, correct? Correct. And you won some things there, and then you lost some things there, correct? Well, we actually won on the issue that the documents, the cost records, the actual cost records should have been provided. And you lost on the settlement. Then the court inexplicably reversed a ruling that can't be squared with the evidence that there was a settlement. And the court also, though, did say with respect to some of your discovery requests, they said they were too general and had to be denied, correct? Not as to cost. I don't believe that's correct, Your Honor. Well, take a look at the excerpt. I think as to the counterclaim, that's true. Is it fair to say, then, that you weren't completely happy with what happened in the lower court in Holland, and then you went to the Court of Appeals, and then you had mixed success there? You won some things, you lost some things there, and at the end of the day, you still didn't think that you got everything that you think you should have. But with respect to due process, it does appear that you received hearings, your arguments were heard, you had an opportunity to appeal, and clearly you won some things, you lost some things. So when you talk about the lack of due process, it seems to me that this is really a discovery issue that you feel like you didn't get the things that you feel that you were entitled to. But with respect to a lack of due process, it does seem that you were heard, they considered your arguments, they didn't agree with all of them, they agreed with some and not others. So where's the crux of the due process claim? Well, the problem is that here, let me turn to what I think is a threshold issue that this Court faces, and that is whether or not the district judge should have denied our request while the summary judgment motion was pending. We had RFP for these cost records out early. Should he have denied our Rule 56D request for a continuance to have that discovery performed? And if... You're talking now in the United States. Yes. Yes. Although, counsel, I understand, excuse me for interrupting, but I understand your argument that you wanted the discovery to demonstrate that your theories were correct in Holland and that had you gotten the things, the discovery that you wanted in Holland, you would have won there. Is that why you wanted the discovery here? Yes. And the actual, except the Washington legislature in 05 passed the updated Uniform Foreign Money Judgment Act, and it added a opportunity to challenge a foreign judgment if the specific proceeding fails a fundamental fairness test. And I guess here's the issue, though, is that why is the discovery, the discovery that you were seeking in Holland, why is it necessary? I mean, I understand why you would like it, because you'd say, well, see, we would have won had we had the discovery. But isn't the issue whether you received due process in Holland, not whether you win on the merits? I understand why that is so crucial to you. But isn't the issue that this Court has, not whether you win on the merits, but whether or not you were afforded due process in Holland? Isn't that, is that the issue that we have? The issue is, was there fundamental fairness due process in the Dutch proceeding? And we have the benefit, Your Honor, in this case of a sample of the record, the cost records for 26 containers, which is about 10 percent of the containers shipped over the six years. A sample was produced to an accountant for my client in Holland that couldn't come into the Dutch proceeding because it occurred during a mediation. But it's I understand, excuse me, Frederick, I understand your view is that if you receive the discovery, it would demonstrate that you are right, your legal theory was correct, and that you should have, should have prevailed in Holland had you been given the discovery that you think you were entitled to. But is it fair to say, though, that the issue that this Court has is looking at the proceeding in Holland and then determining whether there was a due process violation? Is that the issue that's before this Court? Fundamentally, it's a due process issue. But this is similar to the Maersk case, which we cite in our reply brief. That's a situation where a Kuwaiti judgment was entered against an American defendant, and ultimately there was no discovery, there was no witness testimony. And the Court, this was not under the Foreign Judgment Act, but on a comedy basis, the courts, the Court ultimately ruled, the district court ruled, that we're not going to defer to this foreign judgment because the defendant was, and this is a situation where it was again involving containers, the Kuwaiti plaintiff was claiming that there was a huge loss against the shipping line because the containers had computer parts or computer hard drives. In fact, the defense was saying, no, they had low value auto parts, you're trying to defraud us. They weren't provided the opportunity to make their defense. We are making the same point, that if you don't get the cost records, you can't make this defense. In evaluating your claim, what standard of due process is applied? Does this Court apply an international standard of due process? Is it U.S. standard of due process? What's the standard that the Court has to apply in evaluating whether you receive due process in this specific proceeding in Holland? Well, in the, this is, that issue is a case, a matter of first impression under this statute. However, in the arbitration, the foreign arbitration cases that we cite in our briefs, which are referred, it's referred to as the New York Convention, it's clear that the courts throughout the U.S. are applying a U.S. standard of due process and it doesn't have to be exact. For example, Oregon versus Washington. In Washington State, there are interrogatories and extensive expert disclosure and discovery. In my state of Oregon, no interrogatories, no expert disclosure until trial and no expert discovery. That difference is not a matter of the denial of due process, but the overall U.S. concept of what's necessary to meet a test of fundamental fairness. And here, if you are deprived the opportunity to get at the evidence, the cost records that support, that enable you to present your defense, that's the kind of failure that meets the test. The other situation we have here is a situation where the appellate court said, you should have gotten the records. But we are looking at this cold record and nonetheless deciding that there was a settlement agreement. And if you look closely at the record, Your Honor, it's clear that you can't square the appellate court's conclusion that there was a settlement agreement with the record. I mean, the district court said the witnesses were inconsistent. He cited specifics. And here in Holland, you have a situation where the witnesses actually testify, and then the court goes through a process of writing it up, letting them review it, and then they sign it. And we have cited in the record how Holland America's witnesses testified completely inconsistently with the fact that there was a settlement, yet the appellate court inexplicably said that those people who were witnesses who were heard in cross-examination do not lead to a different conclusion on the settlement. And that's an internationally recognized failure for an appellate court to, without the benefit of hearing the witnesses, review something. Is there anything in the record that suggests that the Court of Appeals in Holland did not have the authority or their discretion to change, in essence to change, make its own factual findings as to what happened below? I understand this Court's not supposed to do that, but is there... No, we often don't comply at all, to be fair. There was a declaration put in by an expert for Midbrook that says Dutch appellate courts have this authority. My worry, and where I was going with my questions before my good colleagues asked theirs, is I looked all over to see where there was going to be a denial of due process, because the court refused it. And I couldn't find one. In fact, Weatherford v. Bercy, which is a United States Supreme Court case, says there is no general constitutional right to discovery. And the due process clause has little to say regarding the amount of discovery which the parties must be afforded. We followed that in one of our cases. It is not a cited case, but it's one of those we buried because we said it was non-published. I mean, that's the bottom line of your argument. I wanted more discovery than I got, and I didn't get it, and it's fundamental, and therefore I ought to get it, but Weatherford's very straight. If you got some and you didn't get all you wanted, there's nothing there. Well, Your Honor, with respect, I'd suggest that the Mayer's case, that the Washington cases that we cite, that talk about... Washington cases are not important to me when I got a Supreme Court case dead on. I'll reserve the balance of my time. One last question. Sure. Would you... Is it your position that all proceedings prior to 1938 violated due process because there No, but the situation there, in the U.S. anyway, enabled you to... I mean, the trials were much more extensive. There were adjournments and trials if there was a need. I think that before 1938... And the whole idea of... And you had trial by ambush then. The whole reason for the... You still have that in Oregon in my book. Pardon? It's been practiced in your court and now in Idaho. I was going to ask the same kind of question Judge Bay is asking you, which is... It affects the way you try cases, but it doesn't result in fundamental unfairness, in my view. But it was fundamental from 1797 until 1938. Well, you've... Tough. All right.  Okay. Thank you, Your Honor. Did you ever try a case of ambush? I did. I did all the time in Oregon. May it please the Court, Steve Wells on behalf of Midbrook this morning. It's time, after almost two decades, that this collection case come to an end. After 11 decisions, at least 11 decisions, by five different courts in two countries over 16 years, HABF has had way more process than it's due. And the process that it was granted was not from a kangaroo court in North Korea. It wasn't from a tribal court in some remote corner of Afghanistan. It came from the courts that oversaw one of the great commercial hubs of Western civilization, Amsterdam. The courts here issued repeated, well-reasoned explanations for their decisions. And they did so in a manner that is consistent with fundamental due process. HABF wants to re-litigate all of those decisions. They want to re-litigate the outcome. They want to re-litigate the district court's judge and the court of appeals judge's calls with respect to discovery issues, and that's just not appropriate. Judge Bryan, the district court judge in this case, did exactly what he was supposed to do and what the required, what the statute required him to do. It is time for HABF to pay its bill in this case. I think it's very important to focus on the process and not the outcome. In other words, although we believe the outcome here was right and just and correct, it's the process that's at issue, not the outcome. And I should point this out. Every American court, at least that we've been able to find, that has examined the procedures of the Dutch courts, have found them to be compliant with due process. The two that we cited, Van Biggelaar and Diallo v. Beckmeyer, both make that point. We have not been able to find, nor has HABF apparently been able to find, any cases in which the procedures of the Dutch court have been found not to comport with due process. And when you look at the process that went on in this case, you can see why. In this case, there was notice of the claims, the parties were represented by counsel, the claims were presented, testimony was taken, documentary evidence was presented, discovery was available and provided, and it was done so in a thoughtful manner. It was done so in a well-reasoned manner. They didn't get all the discovery that they wanted, but they did get extensive discovery into the banking records, and as counsel has admitted... And every time they got discovery, if my figures are correct, your original claim was for 3.2 million guilders. They got some discovery, and every time that they got discovery, they reduced it so that now it's only 959,000 euros. It wasn't every time that they did discovery. There were some issues with respect to the exchanges between the accounts. And the only difference that the Court of Appeals made was to reduce it by, I think it was about 40,000 guilders, as I recall. So... I'm sorry. I'm mixing up guilders and euros. All right. Pardon me. I think that was the reduction. It was about 40,000 guilders. The courts also here in Holland exhibited an extreme amount of patience in the face of repetitive claims by HABF, conflicting claims by HABF, different claims by HABF, and claims raised belatedly in the Court of Appeals. The problem I saw about this, however, is it seems to me that every time your client responded to discovery in the Dutch court, you responded to discovery much like some warehouse full of records and said, go find it. And then when they wanted to get to the specifics as to what was going to prove their claim, then the court didn't allow them to get to it. There were two separate categories, two broad categories of discovery that HABF sought in this case. One had to do with the banking records, and that really had to do with their claim that there was, that they had essentially overpaid because of timing on the exchange rate and various other factors relating to the change of the accounts. And they were provided all the banking records. So I don't think there was any issue about the banking records. The record's very clear about that. They got everything they asked for. But when it came to the cost issue, the court did in Holland what many courts do, what most courts do in the United States. They balanced whether or not that there was a basis for the claim and the alleged need for discovery with the burden on the producing party. And analogy, I'm not saying it's an exact analogy, but it's very similar to a situation where a plaintiff brings an allegation, an Iqbal Twombly motion is made, or if it's in fraud, a 9b defense is raised. You haven't been specific enough in your complaint. And no discovery goes forward until specificity is provided. In this case, no specificity was ever provided. It was a phishing expedition, clear and simple. And you can tell from the record, that's what the Dutch court said. There was, they weren't able to say why they thought that they had overpaid. They weren't able to specify any invoice that they had overpaid. Maybe you can help me with this. If I understood the contract correctly, the American buyer said he would pay the Dutch seller, the cost the Dutch seller had for buying the bulbs plus a commission, correct? It was the costs associated with all of, with the bulbs, right? So supplying them and processing them, yes. So had there been no discovery, couldn't the American buyer have taken the invoices he had, compared them to the market rate and show that he was overcharged? Sure. I think there probably were a number of ways that, and you can kind of get this from the, from the courts, the Dutch court's opinions, there were a number of ways that a party who was familiar with the bulb industry, as HABF obviously was, could have said, there's something fishy about, about this invoice and here's why. But they never did that. There's nothing in the record about that. I think the, in addition to the processes that went on in the district court, obviously the processes that went on in the court of appeals are relevant too. You had three separate decisions by the court of appeals, two interim and one final decision by the court of appeals, all of which review all of this evidence and the district court's one case changed because of the court's view about settlement. And in addition to that, we have the collateral attack that went through a different court, the Nord-Holland Dutch court. So you basically have, in addition to the Akmar district court, the Amsterdam court of appeals, the Supreme Court and the Nord-Holland court, you have four Dutch courts looking at these allegations, all coming to one conclusion. If you compare this to the Maersk case, which counsel does, or you compare it to the Dole case, which is the other case that's cited by the appellant here, you can see that this case bears absolutely no resemblance to those cases. In the Maersk case in Kuwait, there were, not only was there no discovery, there was no testimony and there was no judge. They had a legal expert who apparently had opined on those issues. So you had this confluence of factors that led to a denial of due process in that case. In the Nicaragua case involving Dole, you had a discriminatory statute, a statute that discriminated against foreign defendants, in which there was no jurisdiction, where the court didn't follow their own rules and where the court said that the statute provided an irrebuttable presumption of causation. And in that case, the court said there is no due process because countries in Western civilization don't generally require defendants to pay for things they didn't do. That's not remotely the situation that we have in this case. So if you compare this to the cases in which no due process has been found, they are completely different. I think the court should consider the consequences of granting the relief that the appellant is seeking here. If the court were to grant that relief, every losing defendant in a foreign commercial case or proceeding will be able to come into the United States and seek to avoid the enforcement of that judgment, claiming that it didn't get enough discovery or it disagrees with the decision that was made at the district court level or the court of appeals in that foreign court, and the intention will be to re-litigate, essentially, every decision that's made in the foreign courts. That's exactly the situation that Judge Posner in the Lloyds case said that courts should guard against. And as Judge Posner also very eloquently points out in that case, that is exactly contrary to the purpose of this uniform statute. This uniform statute was enacted to ensure that foreign governments know that the judgments of their courts will be expeditiously enforced in this jurisdiction, just as U.S. judgments will be enforced in foreign jurisdictions. With respect to the American versus international due process, which standard it is, I'd submit it doesn't make a difference in this case. I think the best exposition of international due process is set forth in Judge Posner's decision in the Lloyds case or his opinion in the Lloyds case. And he describes it essentially as fundamental fairness, a process which Western civilization or most civilizations use to get the believable, likely to lead to just outcomes. And that's it. And it doesn't, I think there's a distinction made in the briefing about whether because this is an amendment to the Foreign Judgments Act that relates to specific proceedings versus systemic processes, that that's an important distinction that should be paid attention to in this case. And I would suggest that it doesn't make any difference when it comes to the description of what those fundamental processes are. And Judge Posner in the Lloyds decision lays them out. That we would submit to the court is the standard that should be applied here. But if the court were to use an American standard of due process, that too was complied with in this case. As Judge Smith has pointed out, there isn't a constitutional due process right to discovery in the United States. There never has been. And in this case, in any event, the discovery process that occurred here is very similar to the judgments that are made by district courts and magistrates every day. They consider whether the claims have been specified or provided with enough specificity and they weigh the burden on the producing party versus the benefit to the requesting party. So would you suggest that the American standard is more strict than the international standard? I think that the American standard when it comes down to, when it's reduced to its essence is actually quite similar to the international standard, which is fundamental fairness. And I think it's a, what Americans have I think in our system is a standard that specifies in certain situations fundamental fairness more explicitly than in other situations. But I would say that because due process even under the U.S. system is flexible, it is a standard that is very similar to the international standard that's described by Judge Posner. So if I'm writing an opinion here, can I suggest that if they meet the American standard, they've met the international standard? I think that, I think that is right. I'll touch just briefly on the one decision that counsel referred to where the court of appeals essentially reverses the district court, the Dutch district court on the issue of the settlement agreement. And there is no fundamental concept of American due process that says that the factual findings of a trial court or even a jury are inviolate. Even under American due process standards, appellate courts are allowed to reverse district court findings on the basis of clear error. That's the standard in the U.S. It's not held to be a constitutional standard. It's not necessarily a due process standard. But it shows that even under the American system, findings of fact by a district court or even by a jury are not inviolate and may be changed on appeal. Here what the court of, the Dutch court of appeals said very clearly is that there had been no, what the district court missed here was a $100,000 payment, $100,000 gilder payment to HABF by Midbrook as to which there was no other explanation other than settlement. It had been ignored by the lower court. It was perfectly consistent with the testimony of the two witnesses on behalf of Midbrook. Although there was a, the court also took the district court to task for saying that simply because two witnesses were attached or had some relationship to Midbrook that their testimony should be discounted when the other two witnesses were for HABF and the court didn't discount that. What's the standard to review in Holland? That's not in the record, your honor. I couldn't find it. I couldn't, and it's not in the record. But obviously it is as the expert affidavit that we provided is that Dutch courts are allowed to change factual determinations on appeal, and that that is. It's a civil law country, right? Pardon me? It's a civil law country. That's right. Right. And I should say, and just in closing, there's been no allegation here that that action by the court of appeals violated any rule of the Dutch courts or any indication of Dutch procedure. Okay. Thank you very much. With that, I'll close. Thank you. Mr. Hagland? Yes, I did find the record material to respond to the question you had about what was the nature of the objections. And it's in the second interim order of the district court in Holland at ER 15556. And there the district court lists, summarizes some 13 different objections. And these, I think, help illustrate the problem that we've got. They were provided, my client was provided with summaries of the invoices, not the actual underlying costs. And, for example, they charged a uniform 2.5 percent percentage commission that they allegedly were charged by the brokers from whom they sourced bulbs. Holland America's objection was that from their knowledge of the market, this would have varied between zero and 2.5 percent, yet they charged. If they had knowledge of the market, why couldn't they put in evidence that the invoices were rate? Well, because in this instance they say it varies, it's so variable, zero to 2.5 percent commission. They also said that some of the bulbs were cultivated in other countries like Belgium, France, and New Zealand, yet Midbrook charged a 10 percent Dutch harvest trade tax on all the bulbs. There was a trade tax rebate that Midbrook would have benefited from that wasn't addressed. They just had all these, all we got were summaries. That was the problem. There's, I won't go through all the examples, but this shows that they were very specific in their objections. And the market issue, Judge Baird, wouldn't have solved the problem because the market can't substitute for what their actual costs were. It's undisputed that this was supposed to be actual costs, one for one, actual costs plus a commission that Midbrook charged, and my client was never able to get that. In conclusion, the one additional point I'd like to make is that if you look at this new addition to the Uniform Foreign Judgment Recognition Act, it goes beyond looking at the specific system as a whole. And if you look at the commentary to that Uniform Act, there's no question that you are supposed to delve into what happened in the specific proceeding. This is a due process, fundamental fairness in the specific proceeding test. That's inherently factual. Judge Bryan should not have ruled without the benefit of the discovery that we asked for, which is just trying to get the information that completely deprived Holland America from being able to present its defense. And we cite multiple cases that that violates fundamental fairness. The bottom line is that American companies, in connection with this Uniform Act, are entitled with this addition in 05, for all the states that have adopted it, some nearly 30, I think, to a reasonably robust review of what happened in the specific proceeding. And we actually have a sample that we were able to put into our record, they couldn't do it in the Netherlands, of some 26 containers showing more than 25 percent overcharges when you compare the actual costs, which Simone Fleurlog, who is the accountant who filed the declaration, and that's all in the record, was able to testify to. That should not have been ignored in connection with the ruling that Judge Bryan made. The case should be reversed and remanded. Thank you very much. Thank you. The case of Midbrook v. Holland American will be marked submitted.
judges: Bea, N.R. Smith, Hayes